**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

CYNTHIA DIANE MCNEILL,     )
                           )
            Plaintiff,    )
                           )
            v.          )      1:16CV1081
                           )
NANCY A. BERRYHILL,      )
Acting Commissioner of Social  )
Security,[1]                )
                           )
           Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Cynthia Diane McNeill, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Brief); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of June 1, 2008.  (Tr. 253-67, 282-88.)  Upon denial of those applications initially (Tr. 94-111, 144-60) and on reconsideration (Tr. 112-35, 162-69), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 180-81).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 39-84.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 15-30.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-4, 12-14), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1.    [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2014.
>
> 2.    [Plaintiff] has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date.
>
> . . .
>
> 3.    [Plaintiff] has the following severe impairments: acromegaly;[2] degenerative disc disease of the lumbar spine; non-malignant spinal lesion; obesity; tobacco abuse.
>
> . . .

---

[2] Acromegaly is "a chronic disease of adults caused by hypersecretion of growth hormone, characterized by enlargement of many parts of the skeleton, especially distal portions such as the nose, ears, jaws, fingers, and toes."  Elsevier Saunders, Dorland's Illustrated Medical Dictionary 20 (3d ed. 2012).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [Plaintiff] is able to occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs but never ladders, ropes or scaffolds; must avoid more than occasional exposure to extreme cold and vibrations; must avoid all exposure to hazardous machinery and unprotected heights; is able to frequently handle, finger, and feel bilaterally; is able to perform tasks that do not require stringent production or fast pace for example as required by fast pace assembly line work, piece rate work, or quota based work; [Plaintiff] is able to stand for 30 minutes to 1 hour and sit for 30 minutes to 1 hour and thus must be permitted to alternate between sitting and standing every 30 minutes to 1 hour as needed while remaining on task.

. . .

6. [Plaintiff] is capable of performing past relevant work as an accounts payable clerk (DOT 216.482-010), SVP5, skilled, sedentary work. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can also perform.

7. [Plaintiff] has not been under a disability, as defined in the [] Act, from June 1, 2008, through the date of this decision.

(Tr. 20-29 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

4

is substantial evidence." _Hunter_, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." _Mastro_, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." _Id._ at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." _Craig v. Chater_, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," _Hall v. Harris_, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" _id._

(quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

---

[3] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[6]

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ's decision to afford little weight to the opinions of the treating physicians was not supported by substantial evidence, and her overall determination was erroneously based on her own lay opinion" (Docket Entry 12 at 3 (bold font omitted)); and

(2) "[t]he ALJ's Step 4 finding that [Plaintiff's] work as an accounts payable clerk was past relevant work is not supported by substantial evidence" (<u>id.</u> at 15 (bold font omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (<u>See</u> Docket Entry 14 at 3-20.)

---

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. Treating Physicians's Opinions

In Plaintiff's first assignment of error, she contends that "[t]he ALJ's decision to afford little weight to the opinions of . . . treating physicians [Drs. Tiffany L. Morton and Nathaniel Coleman] was not supported by substantial evidence." (Docket Entry 12 at 3 (bold font omitted).)[7]  More specifically, Plaintiff alleges that the ALJ improperly discounted Dr. Morton's opinions because Dr. Morton had only treated Plaintiff on a couple of occasions and had not evaluated Plaintiff in more than a year before the hearing.  (Id. at 5 (citing Tr. 27).)  Additionally, Plaintiff contests the ALJ's conclusion that Dr. Coleman's opinions warranted little weight because the record evidence did not support them.  (Id. at 7-8 (citing Tr. 27).) According to Plaintiff, because "the ALJ rejected all opinions from the medical sources in the record," she improperly "relied on [her] own lay assessment of evidence, which included complicated diseases such as acromegaly and hyperthyroidism that the ALJ would not be able to adequately address." (Id. at 14.)  Plaintiff's arguments miss the mark.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment.  20 C.F.R.

---

[7] In the ALJ's decision, she referred to Dr. Morton as "Tiffany Morts, MD" (Tr. 27); however, an on-the-record discussion between Plaintiff's attorney and the ALJ at the hearing clarified that the ALJ misinterpreted Dr. Morton's signature on a document as "Morts" (see Tr. 42-43).  This Recommendation will refer to this physician by her actual name, Dr. Morton.

9

§§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. For example, the nature and extent of each treatment relationship may appreciably temper the weight an ALJ affords an opinion. 20 C.F.R. §§ 404.1527 (c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference <u>only</u> if well-supported by medical signs and laboratory findings <u>and</u> consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence <u>or</u> if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig</u>, 76 F.3d at 590 (emphasis added).

a. <u>Dr. Morton</u>

On March 7, 2013, Dr. Morton completed an RFC Questionnaire, noting that she treated Plaintiff for acromegaly, which remained "stable," but caused Plaintiff to suffer arthritis, chronic pain,

10

and sweating.  (Tr. 663.)  Dr. Morton opined that Plaintiff's
symptoms would frequently "interfere with the attention and
concentration required to perform simple, work-related tasks,"
that she would need to "recline or lie down" during the work day in
excess of typically allowed breaks, and that she would require
unscheduled breaks every one to two hours for 20 to 30 minutes
throughout the work day.  (Id.)  Dr. Morton further estimated that
Plaintiff could walk less than one city block without rest or
significant pain, sit for 30 minutes at a time and for two hours
total in a work day, stand and/or walk for 15 minutes at a time and
for two hours total in a work day (see id.), occasionally lift
and/or carry up to 10 pounds, and grasp, manipulate, and reach for
up to 20 percent of the workday (see Tr. 664).  In addition, Dr.
Morton believed that Plaintiff would miss work due to her
impairments three to four times per month.  (See id.)

    Here, the ALJ's evaluation of Dr. Morton's opinions complied
with the regulatory requirements.  The ALJ accurately summarized
Dr. Morton's opinions on the RFC Questionnaire, but noted that Dr.
Morton "only saw [Plaintiff] a couple times" and had "not treated
or examined [Plaintiff] for over a year."  (Tr. 27.)  The ALJ
ultimately accorded Dr. Morton's opinions "little weight," as
"inconsistent with the evidence as a whole."  (Id. (emphasis
added).)

11

Plaintiff takes issue with the ALJ's analysis of Dr. Morton's opinion:

> The reasons the ALJ provided for rejecting Dr. Mort[on's] opinion are not good reasons as required by the regulations. Even if Dr. Mort[on] had only seen [Plaintiff] a few times, this is merely one factor to consider and would not be dispositive if her opinion is supported by her own treatment of [Plaintiff] and consistent with the evidence as a whole. The ALJ failed to explain why Dr. Mort[on's] apparent access to treatment notes from the rest of the physicians and treatment providers with UNC was not sufficient to provide her with sufficient knowledge of [Plaintiff's] condition even if she did not personally examine [Plaintiff] more frequently; after all, [Plaintiff] received a significant amount of her treatment for acromegaly and endocrine disorders through UNC in some form during the relevant period. See e.g., [Tr. ]574-641, 675-738, 742-74, 876-969, 1036-1154. The ALJ has not explained how the treatment relationship between Dr. Mort[on] and [Plaintiff] was so deficient that it alone merited rejecting [Dr. Morton's] opinion without any further consideration.
>
> Nor did the ALJ make any discernable assessment or finding related to whether Dr. Mort[on's] opinion was or was not consistent with the evidence or supported by her treatment. Such lack of discussion and analysis shows that the ALJ failed to properly apply the treating physician rule when assessing Dr. Mort[on's] opinion, an omission which prevents this Court from effectively reviewing whether substantial evidence supports the ALJ's rejection of this opinion.

(Docket Entry 12 at 6-7 (emphasis added).) Plaintiff's arguments fail for two reasons.

First, as Plaintiff effectively concedes by use of the word "apparent" above, the mere fact that Dr. Morton worked at the same endocrinology clinic where various other physicians had previously treated Plaintiff demonstrates neither that Dr. Morton reviewed

12

those prior treatment records nor, even if she reviewed them, that she based her opinions, even in part, on those prior treatment records. Indeed, the RFC Questionnaire does not reflect that Dr. Morton based her opinions on anything beyond her own observations and treatment of Plaintiff. (See Tr. 663-64.) Moreover, the regulations expressly permit ALJs to consider the length and frequency of the treatment relationship in deciding the weight to afford a medical opinion, and do not provide any type of allowance or exception for providers within the same practice or office. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the ALJ did not err by discounting Dr. Morton's opinions, in part, because of the infrequency and short duration of treatment. See Smith v. Colvin, No. CIV.A. 0:12-73-DCR, 2013 WL 5350614, at *5 (E.D. Ky. Sept. 23, 2013) (unpublished) (finding no error in ALJ's decision to give no weight to opinion of physician who only examined claimant once, notwithstanding fact physician worked at same clinic as treating physician).

Second, the ALJ's decision contradicts Plaintiff's contention that the ALJ did not "make any discernable assessment or finding related to whether Dr. Mort[on's] opinion was or was not consistent with the evidence" and rejected Dr. Morton's opinions solely on the basis of the treatment relationship's length. (Compare Tr. 27 with, Docket Entry 12 at 6 (emphasis added).) As quoted above, the ALJ expressly found Dr. Morton's opinions "inconsistent with the

13

evidence as a whole." (Tr. 27 (emphasis added).) Elsewhere in the decision, the ALJ discussed the record evidence at length, including Plaintiff's testimony (see Tr. 23), her treatment for acromegaly and degenerative disc disease (see Tr. 23-26), and her reported daily activities (see Tr. 26-27). With regards to both Plaintiff's acromegaly and degenerative disc disease, the ALJ detailed the medical evidence that supported her findings that Plaintiff's "treatment records fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if [Plaintiff] were in fact disabled" (Tr. 23, 24). (See Tr. 23-26.) Accordingly, contrary to Plaintiff's contention (see Docket Entry 12 at 6-7), the Court can meaningfully review the ALJ's reasoning with regards to Dr. Morton's opinions.

In sum, substantial evidence supports the ALJ's decision to discount Dr. Morton's opinion.

b. Dr. Coleman

On July 8, 2013, Dr. Coleman also completed an RFC Questionnaire, but adopted limitations even more restrictive than those of Dr. Morton. (See Tr. 672-73.) Dr. Coleman reported that Plaintiff had sought treatment with the endocrinology clinic since 2000 for acromegaly and hyperthyroidism, which caused hip and back pain and fatigue. (See Tr. 672.) Although Dr. Coleman deemed Plaintiff's prognosis as "good," Dr. Coleman opined that Plaintiff's symptoms would often "interfere with the attention and

14

concentration required to perform simple, work-related tasks," that she would need to "recline or lie down" during the work day in excess of typically allowed breaks, and that she would require unscheduled breaks every hour for 15 minutes throughout the work day. (Id.) Dr. Morton further estimated that Plaintiff could not walk even one city block without rest or significant pain, could sit for five minutes at a time and for five hours total in a work day, could stand and/or walk for five minutes at a time and for five hours total in a work day (see id.), could perform no lifting or carrying of any weight, and had unspecified limitations on her ability to grasp, manipulate, and reach (see Tr. 673). In addition, Dr. Coleman believed that Plaintiff would miss work due to her impairments more than four times per month. (See id.)

The ALJ recited Dr. Coleman's opinions on the RFC Questionnaire, and found as follows:

> Dr. Coleman's opinion is given little weight as the record reflects that [Plaintiff's] symptoms have improved with treatment and the record as a whole does not support claims that [Plaintiff] can only stand or sit for 5 minutes at a time and would miss 4 days of work per month. She sat through the hearing with little adjustment and has cared for young children since the alleged on set [sic] date. [Plaintiff] performs a full range of daily activities including caring for two young children, grocery shopping, laundry, washes dishes and helps her husband with his lawn care business during the on season. Furthermore, conservative treatment such as weight loss, increased fitness and smoking cessation was recommended. She underwent an[] epidural steroid

15

> injection with near complete resolution of leg pain.
> Thus the [ALJ] finds [Plaintiff] has obvious limitations
> but not to the degree prescribed by Dr. Coleman.

(Tr. 27 (internal citations omitted).)

Plaintiff contests the ALJ's finding that the record as whole does not support Dr. Coleman's opinions regarding Plaintiff's ability to sit and predicted absence from work. (See Docket Entry 12 at 8.) In that regard, Plaintiff cites to numerous clinical and diagnostic findings throughout the relevant period in this case which she contends support Dr. Coleman's opinions. (Id. at 8-10.) However, Plaintiff misinterprets this Court's standard of review. The Court must determine whether the ALJ supported her analysis of Dr. Coleman's opinion with substantial evidence, defined as "more than a mere scintilla of evidence but may be somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), and not whether other record evidence weighs against the ALJ's analysis, Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). The ALJ here buttressed her finding that the record as a whole did not support Dr. Coleman's opinions regarding sitting and absences, by noting that Plaintiff sat through the hearing "with little adjustment," that Plaintiff

16

received conservative treatment for her impairments, and that Plaintiff engaged in a wide range of daily activities, including caring for two young children. (Tr. 27.)

Plaintiff specifically challenges the ALJ's reliance on "h[er] observations of [Plaintiff's] ability to sit at the hearing, [as] such observations cannot take the place of medical evidence for rejecting a treating physician's opinion." (Docket Entry 12 at 12 (citing Manning v. Colvin, No. 1:15CV581, 2016 WL 4289290, at *9 n.6 (M.D.N.C. Aug. 15, 2016) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Sept. 6, 2016) (Biggs, J.), and Toms v. Colvin, No. 1:10CV856, 2014 WL 509195, at *10 (M.D.N.C. Feb. 7, 2014) (unpublished) (Webster, M.J.), recommendation adopted, 2014 WL 1338270 (M.D.N.C. Apr. 1, 2014) (unpublished) (Osteen, Jr., C.J.) (in turn citing Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir. 1990))).

Social Security Administration policy affords ALJs some latitude to rely on their personal observations of claimants during hearings as part of their overall credibility analysis. See Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *8 (July 2, 1996) ("SSR 96-7p") ("In instances in which the [ALJ] has observed the individual, the adjudicator is not free to accept or reject the individual's complaints solely on the basis of such

personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements . . . .").[8] However, the ALJ here improperly relied on her observations of Plaintiff as a basis for rejecting Dr. Coleman's opinion. See Harris v. Colvin, 149 F. Supp. 3d 435, 447 (W.D.N.Y. 2016) (finding that the so-called "'sit and squirm' test is not considered sufficient evidence to rebut findings of pain or other symptoms by treating physicians" (internal quotation marks and brackets omitted)); Taynor v. Astrue, No. 5:12-CV-01782, 2013 WL 1663104, at *6 (N.D. Ohio Apr. 17, 2013) (unpublished) (holding that "the ALJ's personal observations of the claimant at the hearing are not an appropriate basis to set aside a treating physician's opinion").

Nevertheless, that error by the ALJ qualifies as harmless under the circumstances presented here. See generally Fisher v.

---

[8] Effective March 28, 2016, see Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date of original Ruling), the Social Security Administration superceded SSR 96-7p with Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16-3p (see Tr. 30), and, because SSR 16-3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4-8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (Eagles, J.); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.).

<u>Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). As quoted above, the ALJ did not rely <u>solely</u> on her personal observations of Plaintiff in discounting Dr. Coleman's opinions regarding sitting and absence from work – the ALJ also cited Plaintiff's daily activities and conservative treatment. (<u>See</u> Tr. 27.) Moreover, the ALJ expressly found that the <u>record as a whole</u> did not support Dr. Coleman's opinion that Plaintiff could only sit for <u>five</u> minutes at a time. (<u>See</u> Tr. 27.) The record as a whole encompasses <u>Plaintiff's own testimony</u> that she can sit for <u>10 to 15</u> minutes at a time. (<u>See</u> Tr. 73.) "[A]n ALJ can surely discount a treating doctor's opinion as to a claimant's limitations where those limitations are more restrictive than a claimant's self-reported limitations . . . ." <u>Taynor</u>, 2013 WL 1663104, at *6.

Given the ALJ's other bases for discounting Dr. Coleman's opinions concerning sitting and absence from work, the ALJ's improper reliance on his personal observations of Plaintiff did not render his analysis of those opinions unsupported by substantial evidence. <u>See generally</u> <u>Foster v. Colvin</u>, No. CIV.A. 6:13-926-TMC, 2014 WL 3829016, at *11 (D.S.C. Aug. 4, 2014) (unpublished) (holding that, "even if the ALJ erred by considering whether the statement was prepared in anticipation of litigation, . . . such

19

error was at most harmless as the ALJ gave several valid reasons for discounting [the treating physician's] opinion").

Plaintiff additionally disputes the ALJ's reliance on Plaintiff's daily activities as a basis for rejecting Dr. Coleman's opinions. (See Docket Entry 12 at 12-13.) According to Plaintiff, the ALJ's "characterization of [Plaintiff's] activities" does not harmonize "with what she actually reported, [and] the ALJ . . . failed to explain how such generic limited activities are inconsistent with [Dr. Coleman's opinions] or with [Plaintiff's] allegations of being unable to work." (Id. (citing Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699, at *5-8 (M.D.N.C. July 23, 2015) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 14, 2015) (Biggs, J.)).)

Plaintiff's reliance on Fletcher misses the mark. In that case, the ALJ had found the plaintiff capable of medium work, see Fletcher, 2015 WL 4506699, at *5, which involves lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, see 20 C.F.R. §§ 404.1567(c), 416.967(c), amounts significantly heavier than the no-lifting opinion offered by Dr. Coleman (see Tr. 673). In Fletcher, the Court focused on the fact that the daily activities relied upon by the ALJ did not demonstrate an ability to perform the demanding requirements of medium work. See, e.g., Fletcher, 2015 WL 4506699, at *7 ("[T]he undersigned does not understand why Plaintiff's ability to take . . . trips over a

multi-year period — most of which involved driving an hour and apparently remaining sedentary upon arrival — would translate to an ability to repeatedly lift twenty-five to fifty pounds for a considerable portion of the day or to stand for most of a work day.").

Under similar facts, another judge of this Court recently rejected a plaintiff's argument, based on Fletcher, that the ALJ's reliance on her daily activities in formulating the RFC warranted remand. See Tolbert v. Colvin, No. 1:15CV437, 2016 WL 6956629, at *6 n.5, *7-8 (M.D.N.C. Nov. 28, 2016) (unpublished) (Osteen, Jr., C.J.). In Tolbert, the ALJ found that the plaintiff could perform light work, based, in part, on her self-reported daily activities, which included making beds, washing dishes, vacuuming, mopping, washing clothes, cooking, playing with her dog, playing computer games, checking the mailbox, dusting, washing her car, and clothes shopping. Id. at *7. The Court concluded that "[r]eliance on Fletcher [wa]s not justified," because the ALJ in Fletcher had found the plaintiff capable of medium work, which involves "significantly heavier" lifting requirements than light work. Id. at *6 n.5. Further, the Court noted Fletcher's emphasis "on the fact that the [daily activities] relied upon by the ALJ did not demonstrate an ability to perform the demanding requirements of medium work." Id. Similarly, the ALJ here limited Plaintiff to

21

light work (see Tr. 22) and, thus, under the persuasive reasoning of Tolbert, Fletcher does not apply.

Moreover, the ALJ here did not overstate Plaintiff's daily activities. The ALJ expressly acknowledged that Plaintiff "alleged some reliance on her daughter for chores" (Tr. 26), but also noted that Plaintiff "admitted at the hearing that her daughter had only been living with her for two weeks at the time of the hearing" (Tr. 26-27; see Tr. 56). Furthermore, Plaintiff does not point to any testimony or evidence to refute the ALJ's statement that, "[s]ince the alleged onset date, [Plaintiff] has cared for 2 young children, performing a full range of care for them" (Tr. 26). (See Docket Entry 12 at 12-13; see also Tr. 56-57.)

Under these circumstances, the ALJ did not err in relying, in part, on Plaintiff's daily activities to discount Dr. Coleman's opinions.

Plaintiff also would have the Court reject the ALJ's finding that Plaintiff's symptoms improved with treatment as a basis for discounting Dr. Coleman's opinions. (See Docket Entry 12 at 11-12 (referencing Tr. 27).) More specifically, Plaintiff focuses on the ALJ's statement that Plaintiff "underwent an[] epidural steroid injection with near complete resolution of leg pain" (Tr. 27), noting that such "injections . . . did not occur until very late in 2013, while [Plaintiff] is alleging disability since 2008; therefore, any such improvement does not explain why Dr. Coleman's

22

opinion from July 2013 merited rejection." (Docket Entry 12 at 11.)

Plaintiff's argument glosses over the ALJ's earlier statement, within the same paragraph, that "the record reflects that [Plaintiff's] <u>symptoms</u> improved with treatment." (Tr. 27 (emphasis added).) Thus, although the ALJ provided Plaintiff's 2013 epidural steroid injection as an <u>example</u> of evidence showing symptom improvement, the ALJ's decision recites other examples of such improvement earlier in the relevant period. For instance, with regards to Plaintiff's acromegaly, the ALJ noted as follows:

> In January 2011[,] [Plaintiff's] IGF[-1 level] had dramatically decreased from 900 to 264 . . . .

> By December 2011, . . . [t]he record indicates significant improvement with medication. In April 2012, [Plaintiff] was taking cabergoline regularly with no side effects. Her IGF-1 level was improved and was the best it had been in the last several years. Continued improvement was noted in September 2012. [Plaintiff's] IGF-1 levels were stable [through] 2013 . . . .

(Tr. 24.)[9] Accordingly, the ALJ did not err in relying on Plaintiff's symptom improvement to discount Dr. Coleman's opinions.

In short, the ALJ provided substantial evidence to support her analysis of Dr. Coleman's opinions.

c. <u>ALJ Substitution of Lay Opinion</u>

Plaintiff further argues that, because "the ALJ rejected all opinion evidence present in the record," she impermissibly "relied

---

[9] IGF-1 refers to insulin-like growth factor 1. <u>See</u> Elsevier Saunders, <u>Dorland's Illustrated Medical Dictionary</u> 913 (3d ed. 2012).

on [her] own lay assessment of evidence, which included complicated diseases such as acromegaly and hyperthyroidism that the ALJ would not be able to adequately assess as well as multiple imaging studies of [Plaintiff's] lumbar spine that showed severe effects with nerve root impingement." (Docket Entry 12 at 14 (citing Webster v. Colvin, No. 1:11CV101, 2014 WL 4060570, at *4-5 (M.D.N.C. Aug. 15, 2014) (unpublished) (Peake, M.J.), recommendation adopted, slip op. (M.D.N.C. Sept. 17, 2014) (Osteen, Jr., C.J.)).)

Plaintiff's argument falls short, because Webster involves distinguishable facts. In that case, the ALJ assigned little weight to the consultative psychological examiner and both state agency psychologists, who had offered "the only mental health opinions of record." Webster, 2014 WL 4060570, at *4. The Court ordered remand, because "the ALJ . . . expressly interpreted the raw data from [the] [p]laintiff's treatment notes to discredit the opinions of the psychiatric consultants and . . . used the raw data to formulate an RFC which [wa]s unsupported by the uncontroverted opinion evidence in this case." Id. Significantly, however, the Court stressed that "this is not a situation in which the record contains conflicting opinions; rather, the three opinions in question all include work restrictions beyond those addressed by the ALJ." Id. at *5 (emphasis added).

In direct contrast, the state agency physicians here both found that Plaintiff could perform medium work with only minor postural limitations (see Tr. 98-99, 106-07, 118-19, 129-30), which the ALJ rejected as too permissive:

> The [ALJ] gives little weight to the opinions of State agency medical consultants Robert Pyle, MD and Jagjit Sandhu, MD, who opined that [Plaintiff] was limited to medium work; could frequently climb ramps and stairs, ladders, ropes or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl. These physicians did not have the opportunity to examine [Plaintiff]. Evidence submitted at the hearing level indicates that [Plaintiff] has further limitations.

(Tr. 27 (emphasis added).) Thus, by adopting a light-exertion RFC, the ALJ struck a balance between the state agency physicians's medium-exertion RFC and the less-than-sedentary-exertion limitations opined by Drs. Morton and Coleman. See Finch v. Astrue, 547 F.3d 933, 936 (8th Cir. 2008) ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."). Moreover, the ALJ did not reject the opinion of consultative medical examiner Dr. M.A. Samia:

> Consultative examiner Dr. Samia did not issue a medical source statement. He did note, however, that [Plaintiff] did not need an assistive device and was able to care for her activities of daily living. Dr. Samia's report is not inconsistent with the . . . [RFC].

(Tr. 28 (emphasis added).) Given these considerations, the ALJ did not impermissibly rely on her lay opinion in formulating the RFC.

In short, the ALJ did not err in evaluating the treating physicians's opinions.

25

## 2. Past Relevant Work

Lastly, Plaintiff asserts that "[t]he ALJ's Step 4 finding that [Plaintiff's] work as an accounts payable clerk was past relevant work is not supported by substantial evidence." (Docket Entry 12 at 15 (bold font omitted).) Plaintiff's assertion fails, because, even if the accounts payable job did not qualify as past relevant work, the ALJ made an alternative step five finding that there were other light, unskilled jobs that exist in significant numbers in the national economy that Plaintiff could perform. (See Tr. 28-29.) Plaintiff contends that, had the ALJ properly adopted the treating physicians's opinions that Plaintiff "was unable to perform even sedentary work[,] . . . the light level jobs the ALJ found would not constitute substantial evidence to support the Step 5 determination." (Docket Entry 12 at 17.) However, as discussed above, the ALJ did not err in her evaluation of the opinions of Drs. Morton and Coleman and thus Plaintiff has not shown that the ALJ failed to support her step five determination with substantial evidence.

## III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Remanding the Final Decision of the Commissioner of Social

Security (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 29, 2017